The People of Illinois v. Ninety Nine Thousand, Six Hundred Eighty Dollars and Twenty Six Cents for the Appellant, Andrew Weatherford, and for the Appellee, Denise Ambrose. Mr. Weatherford. Thank you, Your Honor. May it please the Court, my name is Andrew Weatherford of the firm Johnson & Chili Garris. My clients are Henry and Deborah Washington. The Washingtons are asking that this Honorable Court veteran, they find that the trial court erred in its forfeiture of their savings and reversed that ruling. In my argument today, I will address the following points. The Washingtons were forced to wait 123 days until they had a hearing on the forfeiture of their property. A clear violation of the statutorily mandated 60 days. Second, with regard to Henry, the Court forfeited Henry's disability settlement, his disability wages, his rental income, his investments of certificates of deposit, and his savings that he had in the bank account. I don't know what is what. I'm sorry? Well, cash is all fungible, right? Yes, Your Honor. And bank accounts are basically saved cash. That is correct, Your Honor. So did you have a forensic accounting done at any time during this process to line out saying, okay, we got this amount of money from here, this amount of money from here, this amount of money from here, and this amount of money was spent in the last 10 years, and so we can subtract one from the other, come up with the money in the bank account, and if there's more money in the bank, then that shows that it may have come from some illegal source or whatever. But did you do that at the trial court? At the trial court level, we did not do a forensic accounting of the assets trying to find out where the wages went, where her, Debra's inheritance went, where the railroad disability settlement went. So without one, how is the trial court supposed to decide or pick out the assets that were inherited, the assets that were earned through a disability settlement are safeguarded from any kind of forfeiture? I mean, it's just as reasonable to say or to argue that those assets were spent on these pieces of real estate that were rental houses and used as part of the drug trade. If I understand you correctly... I mean, how do you point to say this disability settlement, you can't take that because that had nothing to do with any kind of illegal activity. Right. But you can't tie that bank account in to those are the same dollars that were received from the railroad. Right. Can you? No, Your Honor, you're correct. There's no initial direct deposit of any of the settlement money from Mr. Washington's railroad settlement. But there is a record of them saving money, there is a record of them depositing their money in their accounts. The way we've divided it up is that the accounts labeled in Henry's name were Henry's and the accounts labeled in Deborah's name were in Deborah's. Therefore, those we assume are those assets of their respective owners. And then any records from the bank, which if I remember correctly, Your Honor, there are defense exhibits and people's exhibits indicating that certain wages from the State of Illinois were then directly deposited into accounts in Deborah's name. Right now, with that in mind, I believe that was... I'm trying to recall the exact account, Your Honor, or Judge. The... Yes, there's a Soy Capital Bank account, People's Exhibit 8, that indicates that these were Deborah's wages deposited directly into that account. And I believe the bank helped provide the people evidence with checks, if memory serves correctly. So I think there is other ways other than just doing a forensic accounting of the assets and of where the settlement money went. This is how we've done it, though. The third thing I wanted to talk about was with regard to Deborah. We believe that the court erred in forfeiting Deborah's inheritance wages from the State of Illinois and any rental income and savings that she had by misapplying the 7-2 presumption and having found no drugs in the home at the time of the seizure. The circuit court followed 725 ILCS 150 backslash 9F. The hearing on the non-real property that exceeds $20,000 seized under provisions of Illinois Controlled Substance Abuse Act requiring a hearing in 60 days. Now, we understand that the general rule here is that forfeitures are disfavored and that allowing a forfeiture must be construed strictly. That's what the law has said, you know, and it's favorable to those whose property has been seized. It's my understanding that the statute also later on, 725 ILCS 150 backslash 13, the General Assembly has indicated that this forfeiture act is to be construed liberally to affect their remedial purposes, or excuse me, purpose. And the case law on this indicates that there must be, as lined out in the statute, that the hearing must be within 60 days unless continued for good cause. And here in our case, we have no continuance for good cause. There was no finding of that in people versus a 1982 Maroon Ford Mustang. There was a finding of good cause. Now, in that case, the way I read the case, it indicates that because the post-trial motion was denied, there was an indication that there was good cause for any and all continuances that they had had during the trial proceedings. In our case, there is not such a finding. Counsel, I will concede that this forfeiture statute is very difficult to reconcile all the provisions. How do you reconcile what it says under Section 10 with the 60-day time limit unless continued for good cause? It says, if property seized for evidence and for forfeiture, which this was, the time periods for instituting judicial and non-judicial forfeiture proceedings shall not begin until the property is no longer necessary for evidence. Doesn't that then mean that the 60 days doesn't start to run until the state no longer needs the evidence? Your Honor, Justice Myercroft, I understand that. The way I believe that the statute should be read is that you must still have a hearing within 60 days to have a determination by the court that there is probable cause for this evidence to be used in a criminal proceeding, is my understanding. That way, if you have the 60 days, it's my estimation that this 60 days is a protection for the claimant so that the state cannot hold their property for an unreasonable amount of time and decide that later, two, three years down the road, oh yes, this is for a criminal proceeding and that's why we've been able to hold on to it for so long. Now, if they have a motion to stay on the proceedings and there's a ruling on that, it's my understanding that that's within the court's purview of Section 10, I believe it was. So, it's our understanding, it's our argument that the 60 day hearing is a protection of the claimants. It is meant to be upheld. It is meant to help facilitate and let a judge decide whether or not the court or the state, excuse me, should be able to hold that property for criminal evidence in a criminal trial, is my understanding. Now, the defendant, or excuse me, the appellee has brought up in their reply brief that the appellee has argued that 60 days did not expire, is their point. And with that, I would just like to offer that the state never, in the trial court level, asked for an extension of the 60 day time period. They never had a motion to strike this 60 day or the answer by the state of the initial answer of April 7th of 2008. They never made a motion of that kind to strike that initial answer. They never had a claim of inadequacy of the April 7th, 2008 answer. And if my arithmetic is correct, Your Honor, Justices, the 60 days would have expired prior to the June 16th, 2008 hearing that this hearing was scheduled for. We did not have a hearing on this matter until the August 8th, 2008, 123 days after the April 7th, 2008 answer. The appellee also argues that the Forfeiture Act does not contain a provision authorizing the court to dismiss this forfeiture complaint and return the property for non-compliance if the 60 day statutory period is not met. To me, there's an inconsistency in the statement that the state wants to have the forfeited property, but doesn't necessarily want to abide by the guidelines of the 60 day statutory period. And it seems to me that in reading the statute as a whole with regard to statutory interpretation, it seems that the General Assembly has crafted this 60 day period in order, in hopes of protecting any claimant who has had their property seized wrongfully without probable cause. Moving on to my second point, the Circuit Court, we believe, has erred with regard to Henry. Excuse me. Counsel, I have a question for you. Yes, Justice Turner. How did the trial court justify appointing the presumption as Deborah's birth mover account, for example? Could you please repeat the question, Justice? I want to make sure I understood. How did the trial court justify applying the presumption of forfeiture against Deborah's birth mover account? The trial court applied the presumption of 725 ILCS 150 backslash 7 parenthesis 2, which is my understanding you need two convictions within five years of a felony violation of... Well, I think you're right. Deborah's convictions were, well, they weren't convictions. Her acts occurred between August 2207 and January 2408, correct? I believe you're correct, Your Honor. Here, let me... Did you say August 22nd and January 24th? I said August 2207 and January 2408. Yes. Well, did Deborah make any deposits in her birth mover account in that time frame? I think the answer to that is no. It's... I would have to review that again for you, Your Honor. I am not... I'm sorry. Here, I do have that information right in front of me. As of... In the birth mover account, as of August 16th, 2009, so this is prior to the first supposed purchase on August 22nd of 2007, okay, so August 16th, there was a total of $31,057.44. Okay. And at the time of the closeout of that account by the state, there was a total of $33,788.31. I do not have in front of me where the amount increase came from, but it is my understanding... Well, it came with the deposit being made on January 28, 2008, $2,500 plus some dividends. But my question is, since there were no deposits made between the two acts that we just talked about a few minutes ago, how does the presumption work against Deborah? How did the court apply it against Deborah? I'm not following how that occurred. And that is exactly our argument, Your Honor, that there were no convictions against Deborah, therefore this presumption of 7-2 should not apply. Well, it almost looks like to me that the trial court took the convictions of her husband and then used those convictions in conjunction with her acts to apply the presumption to her. Is that what the trial court did? And yes, that's my understanding. Do you know if there's any authority, any case law that would justify the trial court doing that? I have found no authority justifying that, Your Honor. With regard to Deborah, and if that presumption there does not apply, it's my understanding that the State could then go ahead and presume, well, you know, 7-1. A 7-1 presumption applies. Well, that would then usually... What do you mean 7-1? I'm sorry, Your Honor. 725 ILCS 150 backslash 7 in parentheses 1. So the first part of that statute. Okay, we'll refresh my recollection. Which basically says all money coined in close proximity that's found next to a controlled substance is forfeitable, essentially. Okay? But in our case, no drugs were found at the residence. No drugs were found in any of the seizures. Any drugs that were found were a tenant's... Well, your argument is that presumption doesn't apply. Right. It's the other presumption that the trial court did. That's correct. For having two different dates. That is correct. Your Honor, my understanding was that they were there just to make sure that there was no confusion in how the two presumptions could apply and how they don't necessarily apply in this case. Counsel, in the State's brief, page 35, they make the statement, between August 2207 and January 2408, Debra made deposits of $47,842 to her Earth Movers account. We talked about this a few minutes ago. My question to you is, do you disagree with that statement? I do, Your Honor. Do you have any idea how they justified putting that into the brief by simply citing exhibit number one, which doesn't show that at all? I don't, Your Honor. I have not... I looked at that and have not been able to figure out what it was as to how they are justifying that. Your Honor, I'm new at this, my first appellate argument, so I apologize. The orange light means how much... You've got five minutes. I've got five minutes. Thank you for clarifying. It is five, isn't it? No, it's two. Two, sorry. You're good till it's red. Okay, okay. Thank you. Thank you. With regard to Henry, which we believe is where a lot of the issue lies, where the State, we believe, if the presumption applies, which we are willing to concede that the presumption applies to his two convictions. Okay? And I see that my time is up. Go ahead. I was going to say that my... We are willing to concede that the presumption applies. However, we have what we believe are likely sources for this income, and therefore, we believe that he has rebutted the presumption. Thank you. Thank you, Counsel. Ms. Ambrose? Okay, please support and counsel. First, I'd like to begin by addressing your concerns about my statement about the amount of money that she deposited. I simply added what was in People's Exhibit No. 1, and I don't have a photocopy of the exhibit. And again, I'm not an accountant, but I was trying to calculate what went into her account during that period of time from Earth Movers. Now, Earth Movers, it didn't show whether she was depositing cash. The Soy Capital, it showed she was depositing substantial amounts of cash. So... Well... Her acts occurred... In a five-month period. From August 2207 until January 2408. Correct. I looked at these exhibits. The only deposits I find in between those two dates in Soy amounted to $6,505. In Earth Movers, zero. And... I believe... What was her other account? Okay. Henry. No, not Henry's. Hers. Were those... Okay, she took $9,000 from her savings account at Soy and $33,000 from her savings account at Earth Movers. And, of course, part of that money was applied against the Cadillac Escalade to satisfy the loan there. How did the court... I'll ask the same question to you that I did to opposing counsel. Apply the presumption against that Earth Movers account, Deborah's account, if there were no deposits in between the two dates, the two acts, which are pertinent? And, again, I guess I came up with a different calculation. And, granted, this is not my strong suit. And I didn't make a photocopy of the exhibits. I was just trying to calculate... Okay, well, if there were no deposits in the Earth Movers, in between the two dates that we're concerned with, would you agree that it would have been inappropriate to apply the presumption against Deborah's Earth Movers account? Well, perhaps you could say that a previous deposit tainted it. I mean, in other words, I know you'd take something that... Why would a previous deposit taint it when the presumption pertains to what happens in between those two dates? But the presumption also allows for... All right, well, then it would be thereafter. Well, if we start off, she's got $30,000. We'll just round it off. And then the two acts are committed, and there are no deposits in between those two acts. How does the child court justify taking that $30,000? And I think it was actually $33,685.78. And there are deposits thereafter, after the final act on her part. I'm showing that was closed out on January 28, 08. And the final act of January 24, 08. Okay, and again... I'm not trying to confuse you, because this is very difficult, but I'm just suggesting, and I might be wrong myself, although I doubt it, because I had a lot of help from my clerk. I needed help, too. I'm just saying, if there were no deposits in that time period, would you agree the trial court simply made a mistake here? No, because I think he could apply accountability principles. Neither one of them said they were an innocent owner. They didn't rely upon that defense down below or in this court. They haven't cited to that provision. So he could apply accountability principles, and the court made a direct finding. I'm sorry, he hasn't cited to what provision? There's a provision in the Forfeiture Act that applies to innocent owners, the innocent owner defense. And neither one of them said that they were acting singly. And the record wouldn't allow that finding anyway, because Henry was convicted in 2006 of cannabis from the marital residence. He's got cannabis there, and then you have a series of controlled substance sales, two of which are from the marital residence, and then Deborah is selling from these rental properties. So I think what you're arguing, then, is the trial court used his offenses along with her acts and then expanded that time in which we can use the presumption. Is there any authority to do that that you know of? I guess your argument would be other than accountability, a joint enterprise. Especially since they didn't attempt to say, I was not aware of what he was doing. Was the forfeiture complaint filed against him as a joint enterprise, under a theory of accountability? Well, it was a single forfeiture complaint. I mean, it didn't treat them as individuals, because they referred to it as a joint drug conspiracy. And the court itself found that they were engaged together in this drug enterprise. And it's apparent they're buying all these cheap properties, and it's kind of like a shell game. So your argument would be, it was incumbent upon her to raise one of those defenses, and they are set forth in the statute. And since she didn't, the trial court would be justified in saying, hey, it was a joint enterprise, accountability. She didn't raise these defenses, and that's why we're in court. Yes, and again, as I said, the court specifically found that the two of them were acting in concert when it made its findings. So it could very well, since they didn't even cite to the innocent owner statute, to say that there's a provision in there, and I think it might be subsection A, about unaware of the other person's illegal activities. We're talking about stuff that's from the marital residence, property that is jointly owned, that they acquired. So the court could very well use accountability principles. You wouldn't have to necessarily say that you're confined simply to her acts. He could also say that this was an ongoing enterprise, and I think even in criminal law, this court finds that if there's more than one controlled substance, or more than one controlled by, that there is this inference that it's an ongoing enterprise. For purposes of a search warrant, and here again we're dealing with probable cause, so it would be appropriate for the court to invoke those principles in finding that the state established probable cause, and then it would be up to them to show, no, I was unaware that this was going on, and it came as a surprise to me that there was nothing like that said. What about the timeliness of the hearing? I interpreted subsection, or section 10, that the state was supposed to do the criminal proceedings first, before they could start with the forfeiture. But the state did start with the forfeiture. My problem is that the time periods for instituting judicial proceedings shall not begin until the property is no longer necessary, but the state began these judicial proceedings. And then the prosecutor attempted to have an informal discussion with the claimants, and that went nowhere, so then she noticed the motion for a hearing, and only by that time, the court set it on a date when it had its jury trial calendar. And the court said, I don't know why I did this, or why it was scheduled for this date, and he asked the claimants, this is going to have to be continued. And they said they had no problem with that. And that was on June 16th. They came up with an additional supplemental record, a report of proceedings, two or three pages. He said he'd have to set the hearing for June 16th, and the claimants said that was okay. So then on the 16th, that's when the prosecutor became ill, and illness of counsel is considered good cause for continuance. So the state certainly satisfied the provisions there, and the court found that it had done so too. Richard also said the fact that he couldn't take this evidence, and it might skew the chain of custody on this evidence. And apparently there was one criminal trial or a plea proceeding. The record doesn't clearly show which. I think when Henry was convicted, and then subsequently, I believe, Deborah was convicted. So there was good cause for continuance. On June 16th when the prosecutor was ill. No, no, June 16th was, oh yes, I'm sorry. June 16th is the date that she was ill. But there was no hearing as to whether that was good cause. The hearing wasn't until August. The hearing was, yes, in August. But in the meantime, they filed this motion that had to be resolved. It was a motion to dismiss, but it was not only on the statutory grounds. It was on evidentiary grounds. In other words, he wanted the court to reach the merits of the forfeiture proceeding and decide that on the basis of a motion to dismiss, which you can't do. A motion to dismiss can't be based upon something like that. So in the meantime, the court found that good cause existed to stay the proceedings before it had even resolved that motion to dismiss it in its entirety. One other point I wanted to make. Excuse me, but in the complaint for forfeiture, was it pointed out that this evidence was, the state wanted to keep this evidence for evidentiary purposes? In the body of the complaint? No, I don't think so. I think part of the reason that the trial court didn't find the claimant's testimony credible is there was a lot of inconsistencies between the two of them and then they didn't have anything to corroborate what they were saying. For instance, Deborah said, no, this was, none of the proceeds here that was forfeited was my inheritance. And then she also said the same thing about Henry's disability. She said his disability had been spent. And, of course, he said part of it remained. So also this deal about the rental property, they said they had two properties that they rented out on a consistent basis for $450 a month, and yet they only produced six rental receipts, and the rental receipts were somewhat suspicious because the rental, the receipt numbers did not correspond to the time periods that they were issued. Also the prosecutor calculated the amount of money that went through the accounts that far exceeded their income that was reported on their income tax. And an officer testified that a lot of this was very indicative of money laundering. Are there any other questions from the court? No, thank you. Thank you. Rebuttal, Mr. Weatherford? Yes, thank you. Counsel did hear the State's argument that it was incumbent upon Deborah to raise the 150-8 defenses? No, I do not. Yes, innocent owner defense could be applicable, but that's not the only way to indicate where these assets came from and why they shouldn't be forfeited. As you'll notice in the Drug Asset Forfeiture Procedure Act, under Section 2, there is a point, letter C, excuse me, that says there was no likely source for such property other than a violation of the above act. We're contending not an innocent owner defense, but the likely source is the following. The settlement, the wages, direct deposit of Deborah's wages. Deborah's own testimony was that settlement money had already been used up. Wasn't that her testimony? That was her testimony, Your Honor. We also have testimony from Henry saying that his settlement money, part of it was saved at home, part of it went into bank accounts. We have, you know, we have been, if you move away from settlement, you move to wages, you have Deborah's wages going directly into the Seward Capital account. You have Henry's wages. I believe he states in his testimony that there was a direct deposit of his wages. And then you also have, you know, rental income with rental receipts. Now, we might be willing to concede that Henry and Deborah are not the most efficient business managers, but that doesn't necessarily make the fact true that they obtained income from drugs. Two points I wanted to, or excuse me, three points I wanted to make is, well, one was the innocent owner is not the only defense that can be made. The likely source of these assets is also a defense that can be put forth. Second, which was brought up that what we come down to here is whether on the presumption of the Drug Forfeiture Act of 7-2, we have whether or not this is a conviction or an act. And we argue that it has to be interpreted as a conviction. If it's simply an act in felony violation of, then you have, you know, you have the instance which we have here where the prosecutor has, Deborah pled guilty to count one of the first instance. And the second instance, there was no prosecution. My estimation, then you, you know, how can you forfeit someone's property if they're not prosecuted for that second act? And it's our argument that it can't be. And third, there has been some comments made by the state that, you know, these people, Deborah and Henry, were, you know, a lot of their income is unaccounted for, but these are just ordinary people. They have normal streams of income. You see from the court's evidence that they have wages coming in from his disability, have wages coming in from her state of Illinois job, that they've saved money as indicated by their account transactions. Thank you, counsel. Thank you. We'll take this matter under advisement.